IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROBINSON, | CASE NO. CV F 09-1403 LJO GSA |
| Plaintiff, | **DECISION ON GOVERNMENT'S SUMMARY JUDGMENT MOTION** |
| vs. | (Doc. 24.) |
| KAWEAH DELTA HOSPITAL, et al., | |
| Defendants. | |

## INTRODUCTION

Defendant United States of America ("Government") seeks summary judgment in the absence of expert opinion to support plaintiff William Robinson's ("Mr. Robinson's") medical malpractice claim arising from his care at Family Healthcare Network, for whom the Government has substituted as a defendant under the Federally Supported Heath Centers Assistance Act ("FSHCAA"), 42 U.S.C. § 233. Mr. Robinson filed no papers to oppose summary judgment timely. This Court considered the Government's summary judgment motion on the record[1] and VACATES the November 17, 2010 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court GRANTS the Government summary judgment.

---

[1] In the absence of Mr. Robinson's timely opposition, this Court carefully reviewed and considered the entire record to determine whether the Government's summary judgment motion is well supported. Omission of reference to an argument, document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper. This Court thoroughly reviewed, considered and applied the evidence and matters it deemed admissible, material and appropriate for summary judgment.

1

# BACKGROUND

## Mr. Robinson's Medical Treatment

In the early morning of January 23, 2007, Mr. Robinson treated at the Kaweah Delta Hospital ("KDH")[2] emergency department with complaints of mid-back pain which Mr. Robinson attributed to a handstand and hyper-extension of his back. Mr. Robinson was afebrile, denied numbness or paraesthesias and tested with normal bilateral motor strength. Mr. Robinson was treated with Ibuprofen and Flexeril and discharged.

Later that evening, Mr. Robinson returned to the KDH emergency department for evaluation of worsening pain. He had a 99.4-degree temperature, reported mid-back and periscapular tenderness, and presented no new neurological symptoms. A thoracic spine x-ray showed no fracture or destructive lesion. Mr. Robinson was discharged with an added medication of Vicodin.

During the afternoon of January 24, 2007, Mr. Robinson treated at Family Healthcare Network for back pain. Mr. Robinson reported no sensory loss, did not appear toxic (98.3-degree temperature), and had full range of motion and normal strength.

Later that evening, Mr. Robinson returned to the KDH emergency department with new neurological symptoms of numbness and lower extremity weakness. An MRI showed a lesion compressing the upper thoracic spinal cord, suspicious for an epidural abscess. During the early morning of January 25, 2007, Mr. Robinson underwent emergency surgery for spinal cord decompression and abscess debridement. Although post-surgery Mr. Robinson was initially densely paralyzed, he improved to ambulate with aids.

## Mr. Robinson's Claims

Mr. Robinson's operative complaint asserts against Family Healthcare Network, its employee Amanda Segars, P.A. ("Ms. Segars"), and Kaweah Delta Health Care District a single negligence claim that they negligently failed "to competently and timely diagnose, manage, and treat Plaintiff WILLIAM ROBINSON's condition, including but not limited to epidural abscess, and render timely medical

///

---

[2] Defendant Kaweah Delta Health Care District operates KDH, which is not covered under the FSHCAA.

treatment . . ."[3]

The United States Attorney certified that Family Healthcare Network and Ms. Segars were covered under the FSHCAA during Mr. Robinson's treatment to warrant the Government to substitute in their place as the proper defendant, pursuant to 28 U.S.C. § 2679(d)(1).

**Expert Disclosure**

The December 1, 2010 Scheduling Conference Order ("scheduling order") set an expert disclosure deadline which was later extended to August 2, 2010. The scheduling order provides that expert disclosures "must be made pursuant to F.R.Civ.P. 26(a)(2)(A) and (B) and shall include all information required thereunder." The scheduling order further provides that failure to comply with expert disclosure requirements "will result in the imposition of appropriate sanctions, which may include the preclusion of testimony or other evidence offered through the expert witness."

On August 2, 2010, the Government filed and served its disclosure to designate experts Eugene J. Carragee, M.D. ("Dr. Carragee"), and Pamela S. Jones, R.N., whose reports concluded that Family Healthcare Network and its employees provided appropriate and timely care to Mr. Robinson. In his declaration, Dr. Carragee noted that Mr. Robinson "developed an extremely rare infection of the spine causing paralysis" and an "epidural abscess would be considered an extremely unlikely cause of back pain in healthy, young individuals." Dr. Carragee opined:

> The diagnosis of spinal epidural abscess is difficult and commonly made after weeks of symptoms. In the setting of back pain without severe or progressive neurological loss, this diagnosis is generally only considered in patients with serious underlying disease, immuno-suppression, or concurrent intractable infection. In most cases, the diagnosis of spinal epidural abscess is made some time after serious neurological loss has become apparent. It is very uncommon to make this diagnosis in patients who are without the risk factors . . . before neurologic injury.

Dr. Carragee concluded: "I find no evidence in the records reviewed to indicate Mr. Robinson did not receive appropriate and timely care at Family Healthcare Network."

Mr. Robinson, on the other hand, failed to disclose an expert witness and lacks an expert on the standard of care or causation of Mr. Robinson's injury.

/ / /

---

[3] The complaint further alleges a series of negligent failures in Mr. Robinson's treatment.

## DISCUSSION

### Summary Judgment Standards

The Government seeks summary judgment in the absence of an expert for Mr. Robinson to "establish the applicable standard of care" or "causation of any injury."

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c)(2); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); see *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the

nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will

5

be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

As discussed below, the Government is entitled to summary judgment in the absence of necessary evidence to support Mr. Robinson's medical malpractice claim.

### Federal Tort Claims Act

The Government notes that Mr. Robinson's medical malpractice claim proceeds against the government under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346(b), 2671-2680. "The FTCA specifies that the liability of the United States is to be determined 'in accordance with the law of the place where the [allegedly tortious] act or omission occurred.'" *Rhoden v. U.S.*, 55 F.3d 428, 430 (9th Cir. 1995) (quoting 28 U.S.C. § 1346(b)).

"Under the FTCA, the question of liability is determined with reference to state law." *Doggett v. U.S.*, 875 F.2d 684, 686 (9th Cir. 1989); *see Richards v. U.S.*, 369 U.S. 1, 11, 82 S.Ct. 585 (1962) ("Thus, we conclude that a reading of the statute as a whole, with due regard to its purpose, requires application of the whole law of the State where the act or omission occurred."); *Taylor v. U.S.*, 821 F.2d 1428, 1433 (9th Cir. 1987) ("The extent of the government's liability is a matter of federal law (28 U.S.C. §§ 1346(b), 2674), albeit determined according to state standards.")

The Government explains that California substantive medical malpractice law applies given that "the events at issue occurred in California." "Although state law defines the requirements for the prima facie showing, whether there is sufficient evidence to create a jury issue is controlled by federal law." *Sharpe v. U.S.*, 230 F.R.D. 452, 460 (E.D. Va. 2005).

///

**Standard Of Care And Causation**

The Government holds Mr. Robinson to present expert opinion "to make a prima facie showing of negligence."

Under California law, the elements for professional negligence, such as medical malpractice, are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." *Turpin v. Sortini*, 31 Cal.3d 220, 229-230, 182 Cal.Rptr. 337 (1982).

The general rule applicable to medical practice cases is:

> The standard of care against which the acts of a physician are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman. The "common knowledge" exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised. The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. Otherwise, expert evidence is conclusive and cannot be disregarded.

*Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal.4th 992, 1001, 35 Cal.Rptr.2d 685 (1994).

"What is or what is not proper practice on the part of the physician is uniformly a question for experts and can be established only by the testimony of such experts." *Sansom v. Ross-Loos Medical Group*, 57 Cal.App.2d 549, 553, 134 P.2d 927 (1943).

Moreover, in a tort action, such as the present one, "causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal.App.3d 396, 402-403, 209 Cal.Rptr. 456 (1985); *see Gotschall v. Daley*, 96 Cal.App.4th 479, 484, 116 Cal.Rptr.2d 822 (2002) ("[E]xpert testimony was essential to prove causation. Without testimony on causation, plaintiff failed to meet his burden on an essential element of the cause of action.")  "In California, causation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on

causation." *Cottle v. Superior Court*, 3 Cal.App.4th 1367, 1384, 5 Cal.Rptr.2d 882 (1992).

The Government notes that Mr. Robinson "does not allege a case of res ipsa loquitur" and is thus "required to provide expert testimony on the standard of care" and causation.

In the absence of expert opinion on the applicable standard of care and causation, Mr. Robinson is unable to establish essential elements of his claim to warrant summary judgment for the Government. The Government demonstrates that Family Healthcare Network's alleged negligence is not a matter of common knowledge and easily observed by the untrained eye. Mr. Robinson may not rely on a mere possibility that Family Healthcare Network's treatment caused Mr. Robinson's alleged injuries or on jury consideration of the totality of circumstances. Mr. Robinson requires requisite expert opinion which he lacks.

**Failure To Satisfy F.R.Civ.P. 26(a)(2)**

The Government further contends that summary judgment is warranted given Mr. Robinson's failure to satisfy expert disclosure and report requirements to further bar necessary expert opinion for his medical malpractice claim.

F.R.Civ.P. 26(a)(2) sets forth requirements for expert disclosure and reports. F.R.Civ.P. 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." F.R.Civ.P. 26(a)(2)(B), requires, without a stipulation or order otherwise, that expert disclosure "be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." The expert report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." F.R.Civ.P. 26(a)(2)(B)(i), (ii). "A party must make these disclosures at the times and in the sequence that the court orders." F.R.Civ.P. 26(a)(2)(C).

This Court set an August 2, 2010 deadline for expert disclosures and reports and required compliance with F.R.Civ.P. 26(a)(2)(A) and (B), including "all information required thereunder." The scheduling order admonished that failure to comply with expert disclosure requirements "will result in the imposition of appropriate sanctions, which may include the preclusion of testimony and other

evidence offered through the expert witness."

A party failing to satisfy expert disclosure requirements "is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." F.R.Civ.P. 37(c)(1). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti*, 259 F.3d at 1106. The exclusion sanction is "self-executing" and "automatic" to "provide[] a strong inducement for disclosure of material." *Yeti*, 259 F.3d at 1106 (quoting F.R.Civ.P. 37 advisory committee's note (1993)).

The Government correctly notes that Mr. Robinson's "failure to secure and timely disclose expert testimony means that he cannot establish the essential elements of his claim" and "lacks evidence" of negligence. The Government is also correct that in the absence of admissible expert testimony, Mr. Robinson "cannot meet his burden of proof as to either the breach of an applicable standard of care or causation." Mr. Robinson's failure to satisfy F.R.Civ.P. 26(a)(2) requirements bars his use of expert opinion necessary to establish elements of his medical malpractice claim. Without expert opinion, Mr. Robinson lacks a meritorious medical malpractice claim to warrant summary judgment for the Government.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS the Government summary judgment; and
2. DIRECTS the clerk to enter judgment in favor of defendant United States of America and against plaintiff William Robinson in that there is no just reason to delay to enter such judgment given Mr. Robinson's claims against the Government and the Government's alleged liability are clear and distinct from claims against and liability of other defendants. *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

**Dated:   November 5, 2010                /s/ Lawrence J. O'Neill**

9

UNITED STATES DISTRICT JUDGE