IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROBINSON, | CASE NO. CV F 09-1403 LJO GSA |
| Plaintiff, | **DECISION ON HOSPITAL DISTRICT'S SUMMARY JUDGMENT MOTION** |
| vs. | (Doc. 26.) |
| KAWEAH DELTA HOSPITAL, et al., | |
| Defendants. / | |

## INTRODUCTION

Defendant Kaweah Delta Health District ("Kaweah Delta") seeks summary judgment in the absence of expert opinion to support plaintiff William Robinson's ("Mr. Robinson's") medical malpractice claim arising from his treatment for a spinal epidural abscess at Kaweah Delta facilities. Mr. Robinson filed no papers to oppose summary judgment timely. This Court considered Kaweah Delta's summary judgment motion on the record[1] and VACATES the November 17, 2010 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court GRANTS Kaweah Delta summary judgment.

---

[1] In the absence of Mr. Robinson's timely opposition, this Court carefully reviewed and considered the entire record to determine whether Kaweah Delta's summary judgment motion is well supported. Omission of reference to an argument, document or paper is not to be construed to the effect that this Court did not consider the argument, document or paper. This Court thoroughly reviewed, considered and applied the evidence and matters it deemed admissible, material and appropriate for summary judgment.

1

# BACKGROUND

## Mr. Robinson's Medical Treatment

In the early morning of January 23, 2007, Mr. Robinson treated at the Kaweah Delta emergency department with complaints of back pain of several days duration and which increased with activity. In his declaration, Kaweah Delta's emergency medicine expert Michael Bresler, M.D. ("Dr. Bresler"),[2] explains that Mr. Robinson had "no neurological symptoms" and that his "neurological exam was normal." Dr. Bresler further notes the absence of "signs or symptoms of infection."

Mr. Robinson returned to the Kaweah Delta emergency department during the late evening of January 23, 2007 and complained of increased pain which Mr. Robinson attributed to a "handstand" he had performed three days earlier. Dr. Bresler again notes that Mr. Robinson had "no neurological symptoms" and that his "neurological exam was normal." According to Dr. Bresler, an "x-ray of the thoracic spine was negative for evidence of any vertebral trauma or infection."

During the late evening of January 24, 2007, Mr. Robinson returned to the Kaweah Delta emergency department where, Dr. Bresler notes, Mr. Robinson "was found to have sensory and motor deficits in his legs" and that an MRI revealed an epidural abscess from T-2-4. Dr. Bresler notes that "epidural abscesses are often secondary to associated osteomyelitis (infection) at the adjacent site."

Near 5 a.m. on January 25, 2007, Mr. Robinson underwent surgery by which an epidural abscess was found and drained. In the absence of immediate improvement, Mr. Robinson treated at a spine rehabilitation center from which he discharged on March 21, 2007 with normal upper leg strength and strong lower legs.

## Mr. Robinson's Claims

Mr. Robinson's operative complaint asserts against Kaweah Delta and other defendants a single negligence claim that the defendants negligently failed "to competently and timely diagnose, manage, and treat Plaintiff WILLIAM ROBINSON's condition, including but not limited to epidural abscess, and render timely medical treatment . . ."[3]

---

[2] Dr. Bresler is board-certified in emergency medicine.

[3] The complaint further alleges a series of negligent failures in Mr. Robinson's treatment.

**Expert Disclosure**

The December 1, 2010 Scheduling Conference Order ("scheduling order") set an expert disclosure deadline which was later extended to August 2, 2010. The scheduling order provides that expert disclosures "must be made pursuant to F.R.Civ.P. 26(a)(2)(A) and (B) and shall include all information required thereunder." The scheduling order further provides that failure to comply with expert disclosure requirements "will result in the imposition of appropriate sanctions, which may include the preclusion of testimony or other evidence offered through the expert witness."

On August 2, 2010, Kaweah Delta filed and served its disclosure to designate experts Martin Weiss, M.D., and Dr. Bresler whose reports concluded that Kaweah Delta and it employees provided appropriate and timely care to Mr. Robinson. In his declaration, Dr. Bresler opines:

> . . . the staff and personnel of Kaweah Delta Hospital acted within the standard of care in the management of this patient. There was no reason to suspect an epidural abscess during the first two visits to the ED [emergency department]. Mr. Robinson's complaint's suggested a traumatic cause of the pain. The negative neurological exam and spine x-rays ruled out significant trauma to the spine and infection of the vertebral spine.
>
> The rapid progression on the afternoon of 1/24/07, is typical of ischemia (compromised blood flow) in case of epidural abscess compounded by the mass effect from the abscess. The resources of the facility were properly mobilized for a late evening emergency requiring mobilization of an MRI team and then surgical team.
>
> The fact that the patient demonstrated significant improvement in his leg function during his stay at [the spine rehabilitation center] relates to the timely decompression of the spinal cord relative to the mass effect of the abscess.
>
> Any residual neurological deficit undoubtedly relates to the effect of the ischemia to the cord that occurred during the afternoon of 1/24/07, that resulted in an irreversible stroke that is unresponsive to any surgical manipulation.

Dr. Bresler concludes in finding "absolutely no deviation of the standard of care by any employees of Kaweah Delta District Hospital."

Mr. Robinson, on the other hand, failed to disclose an expert witness and lacks an expert on the standard of care, its breach, or causation of Mr. Robinson's injury.

**DISCUSSION**

**Summary Judgment Standards**

Kaweah Delta seeks summary judgment in the absence of an expert for Mr. Robinson to "establish a violation of the standard of care and causation."

F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on all or part of the claim." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56(c)(2); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(c)(2); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The evidence of the party opposing summary judgment is to be believed and all reasonable inferences that may be drawn from the facts before the court must be drawn in favor of the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). A "complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial" to entitle the moving party to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574. "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548 ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e)(2) requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court

1   "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather
2   must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d
3   1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file
4   at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary
5   materials." *One Piece of Real Property*, 363 F.3d at 1101.

6   As discussed below, Kaweah Delta is entitled to summary judgment in the absence of necessary
7   evidence to support Mr. Robinson's medical malpractice claim.

### Standard Of Care And Causation

9   Kaweah Delta holds Mr. Robinson to "use experts to establish a violation of the standard of care
10  and causation" and contends that in the absence of such experts, Mr. Robinson "cannot meet his burden
11  of proof." Kaweah Delta notes that medial malpractice is a state law claim. *See Baker v. Adventist*
12  *Health, Inc.*, 260 F.3d 987, 993 (9th Cir. 2001).

13  Under California law, the elements for professional negligence, such as medical malpractice, are:
14  "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his
15  profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection
16  between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the
17  professional's negligence." *Turpin v. Sortini*, 31 Cal.3d 220, 229-230, 182 Cal.Rptr. 337 (1982).

18  The general rule applicable to medical practice cases is:

> The standard of care against which the acts of a physician [or medical treater] are to be measured is a matter peculiarly within the knowledge of experts; it presents the basic issue in a malpractice action and can only be proved by their testimony [citations], unless the conduct required by the particular circumstances is within the common knowledge of the layman. The "common knowledge" exception is principally limited to situations in which the plaintiff can invoke the doctrine of res ipsa loquitur, i.e., when a layperson is able to say as a matter of common knowledge and observation that the consequences of professional treatment were not such as ordinarily would have followed if due care had been exercised. The classic example, of course, is the X-ray revealing a scalpel left in the patient's body following surgery. Otherwise, expert evidence is conclusive and cannot be disregarded.

25  *Flowers v. Torrance Memorial Hospital Medical Center*, 8 Cal.4th 992, 1001, 35 Cal.Rptr.2d 685
26  (1994).

27  "What is or what is not proper practice on the part of the physician is uniformly a question for
28  experts and can be established only by the testimony of such experts." *Sansom v. Ross-Loos Medical*

*Group*, 57 Cal.App.2d 549, 553, 134 P.2d 927 (1943).

Moreover, in a tort action, such as the present one, "causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." *Jones v. Ortho Pharmaceutical Corp.*, 163 Cal.App.3d 396, 402-403, 209 Cal.Rptr. 456 (1985); *see Gotschall v. Daley*, 96 Cal.App.4th 479, 484, 116 Cal.Rptr.2d 822 (2002) ("[E]xpert testimony was essential to prove causation. Without testimony on causation, plaintiff failed to meet his burden on an essential element of the cause of action.")  "In California, causation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation." *Cottle v. Superior Court*, 3 Cal.App.4th 1367, 1384, 5 Cal.Rptr.2d 882 (1992).

Kaweah Delta notes that Mr. Robinson "does not allege a case of res ipsa loquitur" and is thus "required to provide expert testimony on the standard of care" and causation.

In the absence of expert opinion on the applicable standard of care and causation, Mr. Robinson is unable to establish essential elements of his claim to warrant summary judgment for Kaweah Delta. Kaweah Delta demonstrates that its alleged negligence is not a matter of common knowledge and easily observed by the untrained eye. Mr. Robinson may not rely on a mere possibility that Kaweah Delta's treatment caused Mr. Robinson's alleged injuries or on jury consideration of the totality of circumstances. Mr. Robinson requires requisite expert opinion which he lacks.

### **Failure To Satisfy F.R.Civ.P. 26(a)(2)**

Kaweah Delta further contends that summary judgment is warranted given Mr. Robinson's failure to satisfy expert disclosure and report requirements to further bar necessary expert opinion for his medical malpractice claim.

F.R.Civ.P. 26(a)(2) sets forth requirements for expert disclosure and reports. F.R.Civ.P. 26(a)(2)(A) requires a party to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." F.R.Civ.P. 26(a)(2)(B) requires, without a stipulation or order otherwise, that expert disclosure "be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert

testimony." The expert report must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the data or other information considered by the witness in forming them." F.R.Civ.P. 26(a)(2)(B)(i), (ii). "A party must make these disclosures at the times and in the sequence that the court orders." F.R.Civ.P. 26(a)(2)(C).

This Court set an August 2, 2010 deadline for expert disclosures and reports and required compliance with F.R.Civ.P. 26(a)(2)(A) and (B), including "all information required thereunder." The scheduling order admonished that failure to comply with expert disclosure requirements "will result in the imposition of appropriate sanctions, which may include the preclusion of testimony and other evidence offered through the expert witness."

A party failing to satisfy expert disclosure requirements "is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or is harmless." F.R.Civ.P. 37(c)(1). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). "[E]ven absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti*, 259 F.3d at 1106. The exclusion sanction is "self-executing" and "automatic" to "provide[] a strong inducement for disclosure of material." *Yeti*, 259 F.3d at 1106 (quoting F.R.Civ.P. 37 advisory committee's note (1993)).

Kaweah Delta correctly notes that Mr. Robinson's "failure to secure and timely disclose expert testimony means that he cannot establish the essential elements of his claim" and "lacks evidence" of negligence. Kaweah Delta is also correct that in the absence of admissible expert testimony, Mr. Robinson "cannot meet his burden of proof as to either the breach of an applicable standard of care or causation." Mr. Robinson's failure to satisfy F.R.Civ.P. 26(a)(2) requirements bars his use of expert opinion necessary to establish elements of his negligence claim. Without expert opinion, Mr. Robinson lacks a meritorious negligence claim to warrant summary judgment for Kaweah Delta.

## CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1.   GRANTS Kaweah Delta summary judgment; and

2.   DIRECTS the clerk to enter judgment in favor of defendant Kaweah Delta Health Care District and against plaintiff William Robinson in that there is no just reason to delay to enter such judgment given that Mr. Robinson's claims against Kaweah Delta and Kaweah Delta's alleged liability are clear and distinct from the claims against and liability of other defendants.  *See* F.R.Civ.P. 54(b).

IT IS SO ORDERED.

**Dated:   November 5, 2010**                /s/ Lawrence J. O'Neill
                                         UNITED STATES DISTRICT JUDGE